Montanari v Lorber (2021 NY Slip Op 06684)





Montanari v Lorber


2021 NY Slip Op 06684


Decided on December 1, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 1, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ANGELA G. IANNACCI
LINDA CHRISTOPHER
JOSEPH A. ZAYAS, JJ.


2017-12981
2018-06428
 (Index No. 703640/14)

[*1]Stefano Montanari, et al., appellants, 
v
Daniel Lorber, et al., defendants, Scott R. Strumpfler, et al., respondents.


Silberstein, Awad & Miklos, P.C., Garden City, NY (Susan B. Eisner and Michael Lauterborn of counsel), for appellants.
Marulli, Lindenbaum & Tomaszewski, LLP, New York, NY (Gerard J. Marulli of counsel), for respondents Scott R. Strumpfler and Nassau Emergency Medicine, P.C.
Bartlett LLP, Mineola, NY (Robert G. Vizza and Frank Schiralli, Jr., of counsel), for respondents Marianne Hamra and St. Francis Hospital.
Connick, Myers, McNamee & Fitzgerald, PLLC, Mineola, NY (Glenn P. McNamee of counsel), for respondent Lance Rubel.
Wagner, Doman, Leto & DiLeo, P.C., Mineola, NY (Deborah C. Sturm of counsel), for respondents Jonathan Waxner, Alan Schecter, and Nassau Chest Physicians, P.C.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiffs appeal from (1) an order of the Supreme Court, Queens County (Peter J. O'Donoghue, J.), entered October 13, 2017, and (2) a judgment of the same court entered May 24, 2018. The order, insofar as appealed from, granted those branches of the separate motions of the defendants Scott R. Strumpfler and Nassau Emergency Medicine, P.C., the defendants Marianne Hamra and St. Francis Hospital, the defendants Jonathan Waxner, Alan Schecter, and Nassau Chest Physicians, P.C., and the defendant Lance Rubel which were for summary judgment dismissing the causes of action alleging medical malpractice and loss of consortium insofar as asserted against each of them. The judgment, insofar as appealed from, upon the order, is in favor of the defendants Scott R. Strumpfler, Nassau Emergency Medicine, P.C., Marianne Hamra, St. Francis Hospital, Jonathan Waxner, Alan Schecter, Nassau Chest Physicians, P.C., and Lance Rubel and against the plaintiffs dismissing the causes of action alleging medical malpractice and loss of consortium insofar as asserted against those defendants.
ORDERED that the appeal from the order is dismissed; and it is further,
ORDERED that the judgment is modified, on the law, by deleting the provisions thereof dismissing the causes of action alleging medical malpractice and loss of consortium insofar as asserted against the defendants Scott R. Strumpfler, Nassau Emergency Medicine, P.C., Jonathan Waxner, Alan Schecter, and Nassau Chest Physicians, P.C.; as so modified, the judgment is affirmed insofar as appealed from, those branches of the separate motions of the defendants Scott R. Strumpfler and Nassau Emergency Medicine, P.C., and the defendants Jonathan Waxner, Alan [*2]Schecter, and Nassau Chest Physicians, P.C., which were for summary judgment dismissing the causes of action alleging medical malpractice and loss of consortium insofar as asserted against each of them are denied, the order is modified accordingly, and the causes of action alleging medical malpractice and loss of consortium insofar as asserted against the defendants Scott R. Strumpfler, Nassau Emergency Medicine, P.C., Jonathan Waxner, Alan Schecter, and Nassau Chest Physicians, P.C., are reinstated; and it is further,
ORDERED that one bill of costs is awarded to the plaintiffs, payable by the defendants Scott R. Strumpfler and Nassau Emergency Medicine, P.C., and the defendants Jonathan Waxner, Alan Schecter, and Nassau Chest Physicians, P.C., appearing separately and filing separate briefs, and one bill of costs is awarded to the defendants Marianne Hamra and St. Francis Hospital and the defendant Lance Rubel, appearing separately and filing separate briefs, payable by the plaintiffs.
The appeal from the order must be dismissed because the right of direct appeal therefrom terminated upon the entry of the judgment in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501[a][1]).
The plaintiff Stefano Montanari (hereinafter Montanari) was brought via ambulance to the defendant St. Francis Hospital (hereinafter St. Francis) on April 15, 2013. While Montanari was in the triage area, he began to seize. Montanari was moved to a code room, and the defendant Scott R. Strumpfler, an emergency medicine physician, began examining him. Approximately five minutes later, Montanari went into cardiac arrest. Montanari was resuscitated, transferred to the intensive care unit, and placed on an Arctic Sun machine, which was used to induce hypothermia. Over the next several days, Montanari was seen by, among others, the defendants Lance Rubel, a nephrologist; Marianne Hamra, a hospitalist; Jonathan Waxner, a pulmonary and critical care doctor; and Alan Schecter, also a pulmonary and critical care doctor. On April 17, 2013, a nurse practitioner requested a vascular consultation to rule out compartment syndrome. The defendant Richard Matano, a vascular surgeon, examined Montanari and found his extremities were cyanotic. Both of Montanari's calves were rigid, and Matano was unable to flex or dorsiflex Montinari's ankles, even with force. On April 19, 2013, Matano performed fasciotomies on Montanari's legs. Matano amputated Montanari's legs above the knees on April 29, 2013.
Montanari, and his wife suing derivatively, subsequently commenced this action against, among others, Strumpfler, Hamra, Waxner, Schecter, and Rubel to recover damages for medical malpractice, lack of informed consent, and loss of consortium. Strumpfler and the defendant Nassau Emergency Medicine, P.C. (hereinafter together the Strumpfler defendants), moved for summary judgment dismissing the complaint insofar as asserted against them. Hamra and St. Francis (hereinafter together the Hamra defendants) separately moved for summary judgment dismissing the complaint insofar as asserted against them. Waxner, Schecter, and the defendant Nassau Chest Physicians, P.C. (hereinafter collectively the Waxner defendants), separately moved for summary judgment dismissing the complaint insofar as asserted against them. Rubel separately moved for summary judgment dismissing the complaint insofar as asserted against him. In an order entered October 13, 2017, the Supreme Court granted each of these motions. On May 24, 2018, a judgment was entered, upon the order, in favor of the Strumpfler defendants, the Hamra defendants, the Waxner defendants, and Rubel and against the plaintiffs, dismissing the complaint insofar as asserted against those defendants.
"Medical malpractice actions require proof that the defendant physician deviated or departed from the accepted community standards of practice, and that such deviation . . . was a proximate cause of the plaintiff's injuries" (Dixon v Chang, 163 AD3d 525, 526 [internal quotation marks omitted]). "When moving for summary judgment, a defendant doctor has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby" (id. at 526-527 [internal quotation marks omitted]). Where a defendant physician makes a prima facie showing, "the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, . . . but only as to the elements on which the defendant met the prima facie burden" (id. at 527 [internal quotation marks omitted]). "Where a defendant makes [*3]a prima facie showing on both elements, the burden shifts to the plaintiff to rebut the defendant's showing by raising a triable issue of fact as to both the departure element and the causation element" (Gilmore v Mihail, 174 AD3d 686, 687 [internal quotation marks omitted]). "Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions" (id. at 687 [internal quotation marks omitted]).
"[A] medical expert need not be a specialist in a particular field in order to testify regarding accepted practices in that field" (DiLorenzo v Zaso, 148 AD3d 1111, 1112 [internal quotation marks omitted]). "However, the witness must be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered is reliable" (id. at 1112-1113 [internal quotation marks omitted]). "Thus, where a physician opines outside his or her area of specialization, a foundation must be laid tending to support the reliability of the opinion rendered" (id. at 1113 [internal quotation marks omitted]). "Where no such foundation is laid, the expert's opinion is of no probative value" (id. [internal quotation marks omitted]).
Here, the Strumpfler defendants demonstrated their prima facie entitlement to judgment as a matter of law dismissing the cause of action alleging medical malpractice insofar as asserted against them. According to the Strumpfler defendants' expert, Strumpfler properly ordered hydrocortisone for Montanari and followed advanced cardiovascular life support protocols to resuscitate him. The Strumpfler defendants' expert averred that it would have taken hours for hydrocortisone to take effect, and as such, Strumpfler administering hydrocortisone a few minutes earlier than he did would have not have prevented Montanari's cardiac arrest, which occurred approximately five minutes after Strumpfler began to examine him. In opposition, the plaintiffs raised triable issues of fact. According to the plaintiffs' expert, Strumpfler deviated from the standard of care by, inter alia, failing to speak with ambulance personnel or check both of Montanari's arms for a medic-alert bracelet, which steps would have alerted him to Montanari having Addison's disease. Had Strumpfler learned that Montanari had Addison's disease immediately upon treating him, he would have known to begin administering fluids and hydrocortisone to Montanari immediately. The expert averred that hydrocortisone would have begun taking effect within one minute of it being given to Montanari and that it would have either prevented Montanari from going into cardiac arrest or led to an easier resuscitation and reduced complications from the cardiac arrest, and ultimately would have reduced his risk of developing compartment syndrome or rhabdomyolysis. In light of these conflicting medical expert opinions, summary judgment was not appropriate with respect to the Strumpfler defendants (see Williams v Light, 196 AD3d 668). Accordingly, the Supreme Court should have denied that branch of the Strumpfler defendants' motion which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against them.
The Waxner defendants demonstrated their prima facie entitlement to judgment as a matter of law dismissing the cause of action alleging medical malpractice insofar as asserted against them. The Waxner defendants' expert opined, inter alia, that Waxner and Schecter properly examined Montanari on April 16 and 17, 2013, and that there was no clinical evidence of compartment syndrome at the time of their examinations; the fact that Montanari may have developed compartment syndrome was not due to any malpractice on the part of Waxner or Schecter. In opposition, the plaintiffs raised triable issues of fact. The plaintiffs' expert opined, among other things, that the physical examinations that Waxner and Schecter conducted were inadequate. The plaintiffs' expert further opined that the signs of compartment syndrome that were apparent on the evening of April 17 were "not something that merely develops within hours" and that, as such, they would have been apparent to Waxner and Schecter had they performed more comprehensive physical examinations on April 16 and 17. Thus, according to the plaintiffs' expert, had Waxner and Schecter conducted proper examinations of Montanari's legs, compartment syndrome would have been diagnosed earlier than it was. In light of these conflicting medical expert opinions, summary judgment was not appropriate with respect to the Waxner defendants (see id.). Accordingly, the Supreme Court should have denied that branch of the Waxner defendants' motion which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against them.
The Hamra defendants demonstrated their prima facie entitlement to judgment as a matter of law dismissing the cause of action alleging medical malpractice insofar as asserted against them. The Hamra defendants' expert opined that, based on the findings of Hamra and the other doctors who examined Montanari on April 16 and 17, Montanari did not have any signs or symptoms consistent with compartment syndrome when Hamra examined him on those dates. He further opined that Hamra "did not fail to diagnose compartment syndrome, as no compartment syndrome was then in existence." Additionally, he opined that no acts or omissions of Hamra caused or contributed to any injury alleged by the plaintiffs. Moreover, the expert opined that there was no delay in providing medical care to Montanari and the plan of care instituted by St. Francis was in keeping with good and accepted medical practice. In opposition, the plaintiffs failed to raise a triable issue of fact, as their expert affirmations were insufficient. "A redacted physician's affidavit should not be considered in opposition to a motion for summary judgment where the plaintiff does not offer an explanation for the failure to identify the expert by name and does not tender an unredacted affidavit for in camera review" (Colletti v Deutsch, 150 AD3d 1196, 1198; see Derrick v North Star Orthopedics, PLLC, 121 AD3d 741, 743). "Such an affidavit is insufficient to raise a triable issue of fact" (Colletti v Deutsch, 150 AD3d at 1198). Here, the two expert affirmations that the plaintiffs submitted in opposition to the Hamra defendants' motion had the names and signatures of the physicians redacted. The plaintiffs failed to explain why they were not naming their experts, and there is no proof on this record that the plaintiffs submitted signed and unredacted affirmations to the Supreme Court. Accordingly, the plaintiffs' expert affirmations were insufficient to raise a triable issue of fact, and the court properly granted that branch of the Hamra defendants' motion which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against them (see id.; Derrick v North Star Orthopedics, PLLC, 121 AD3d at 743).
Rubel demonstrated his prima facie entitlement to judgment as a matter of law dismissing the cause of action alleging medical malpractice insofar as asserted against him. Rubel's expert opined, inter alia, that Rubel, a nephrologist, correctly noted that Montanari might be developing rhabdomyolysis; placed Montanari on slow, low, efficient, daily dialysis until he was stable enough to be placed on conventional dialysis; addressed Montanari's fluid management; properly examined Montanari's extremities for pitting edema; and properly treated hypokalemia and hyperkalemia. Moreover, he opined that Rubel's care and treatment rendered to Montanari was confined to Rubel's specialty of nephrology and was in accordance with accepted medical practice. The expert further opined that Montanari's injuries did not result from any alleged departure by Rubel from the standard of care. In opposition to Rubel's prima facie showing, the plaintiffs failed to raise a triable issue of fact. Rubel correctly contends that the plaintiffs' expert's affirmation was "of no probative value" (DiLorenzo v Zaso, 148 AD3d at 1113 [internal quotation marks omitted]). The plaintiffs' expert was not a nephrologist, and the plaintiffs failed to lay a foundation demonstrating that he or she was "possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered [was] reliable" (id. at 1112-1113 [internal quotation marks omitted]). Accordingly, the plaintiffs' expert's opinion was of no probative value and was insufficient to defeat Rubel's prima facie showing.
As the cause of action to recover damages for loss of consortium is derivative in nature, the reinstatement of the cause of action alleging medical malpractice insofar as asserted against the Strumpfler defendants and the Waxner defendants necessitates the reinstatement of the loss of consortium cause of action insofar as asserted against those defendants (see Niewojt v Nikko Constr. Corp., 139 AD3d 1024, 1026).
DILLON, J.P., IANNACCI, CHRISTOPHER and ZAYAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court