| Rivera v Kumley |
|:---:|
| 2024 NY Slip Op 32842(U) |
| August 13, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 503467/2022 |
| Judge: Consuelo Mallafre Melendez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 15 of the Supreme Court of the State of NY, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 13th day of August 2024.

SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF KINGS

-------------------------------------------------------------------------X

LUZ RIVERA,

      Plaintiff,

  -against-

BRITTA KUMLEY, M.D. and NYU LANGONE HOSPITAL-BROOKLYN,

      Defendants.

-------------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 503467/2022
 Mo. Seq. 1

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

<u>NYSCEF #s:</u> 20 – 23, 24 – 36, 38 – 41, 42 – 46, 48 – 49, 50

Defendants Britta Kumley, M.D. ("Dr. Kumley") and NYU Langone Hospitals s/h/a NYU Langone Hospital-Brooklyn ("NYU Langone") move (Seq. No. 1) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint against them. Plaintiff opposes the motion.

Plaintiff commenced this action on February 3, 2022, alleging medical malpractice, negligence, and lack of informed consent in connection to the prevention and treatment of pressure ulcers.

Plaintiff, then 55 years old, was admitted to NYU Langone from March 12, 2021 to April 23, 2021. She first presented at the emergency department by ambulance and was admitted to the medicine unit on March 13 with acute respiratory failure, atrial fibrillation (irregular heartbeat), and complications of COVID-19 and pneumonia. From March 14 through March 21, she was assessed with Braden scores of 19 or 20 (low risk for pressure ulcers).

1

[* 1]

After two incidents of oxygen desaturation, Plaintiff was admitted to the ICU on March 19. Attending physician Dr. Kumley began treating her on March 22. On March 23, she was intubated and placed on a mechanical ventilator. During her ICU admission, she was also given a tracheostomy and PEG feeding tube.

Plaintiff developed multiple pressure ulcers during her hospital stay at NYU Langone, including a stage I sacral pressure ulcer first noted on March 25, right ear skin discoloration, abdominal and chest discolorations, sacrum and buttocks ulcers, ulcer with necrosis on her right thigh, and left heel deep tissue injuries. On April 9, she was examined by an infectious disease consult for a persistent fever and possible "superimposed infection" in conjunction with her COVID-19 infection. On April 16, a surgical wound debridement was performed on her sacral ulcer, which was then stage IV and measured 15 cm x 20 cm.

She was ultimately discharged on April 23 to Henry J. Charter for long term care, where she received further treatment for the stage IV sacral ulcer and was weaned off mechanical ventilation.

Plaintiff alleges that NYU Langone personnel, including ICU physician Dr. Kumley, departed from the standard of care by improperly assessing Plaintiff's risk for pressure ulcers, failing to implement pressure ulcer prevention measures, and failing to timely and properly treat her pressure ulcers. Plaintiff further alleges that those departures from the standard of care proximately caused the development and deterioration of Plaintiff's pressure ulcers and subsequent infection and sepsis.

Generally, "[i]n determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party" (*Stukas v Streiter,* 83 AD3d 18, 22 [2d Dept 2011]). In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department:

"The elements of a medical malpractice cause of action are a deviation or departure from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries. When moving for summary judgment, a defendant provider has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby. In order to sustain this burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's bill of particulars. In opposition, the plaintiff must demonstrate the existence of a triable issue of fact as to the elements on which the defendant has met his or her initial burden. General

2

[* 2]

allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant's summary judgment motion. Although summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions, expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023] [internal quotation marks and citations omitted]).

An expert opinion need not be provided by a specialist, but the expert must demonstrate that they are "possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered is reliable" (*DiLorenzo v Zaso,* 148 AD3d 1111, 1112-1113 [2d Dept 2017]; *see also Cerrone v North Shore-Long Is. Jewish Health Sys, Inc.,* 197 AD3d 449 [2d Dept 2021]).

In support of this motion, Defendants submit an expert affirmation from Louis Brusco Jr., M.D. ("Dr. Brusco"), a physician certified in internal medicine and critical care medicine, and an expert affirmation from Pamela Reilly ("RN Reilly"), a registered nurse with board certification in wound, ostomy, and continence nursing.

Based on his review of the records, Dr. Brusco opines that there were no departures from the standard of care by Dr. Kumley or other NYU Langone personnel. He opines that throughout her admission, Plaintiff was appropriately evaluated for risk and development of pressure ulcers. Dr. Brusco opines that Dr. Kumley, as the attending physician, diligently oversaw Plaintiff's complex condition and ordered appropriate consults and interventions. Dr. Brusco notes that multiple wound care consults were ordered and performed within 24 hours of the discovery of skin breakdown, and these specialists gave appropriate recommendations for skin cleansing, turning and positioning, and nutritional support, which were implemented. He opines that the patient also received timely consultation and treatment from an infectious disease specialist on April 9, and she was "treated the entire time for her COVID-19 infection" and "superimposed infection." Dr. Brusco attributes Plaintiff's development of fever and sepsis to COVID-19 and "ventilator-associated pneumonia," and opines that she "improved prior to discharge" due to the appropriate treatment received. He further opines that the surgical consult and debridement

3

was timely ordered and performed, due to the "risk/benefit analysis involved in performing any surgery on such a fragile patient."

Dr. Brusco also opines that Plaintiff's skin breakdown was unavoidable and directly connected to "the deleterious effect of COVID-19 on the skin," noting that Plaintiff's hypercoagulable state due to COVID-19 placed her risk of developing ulcers "at least three times" higher than a patient without such comorbidities. He notes that throughout her chart, wound care nurse practitioners attributed her skin breakdown to "COVID-19 associated cutaneous skin manifestations" of the sacrum and right thigh. The expert opines that her development and worsening of pressure ulcers and deep tissue injuries could not be "prevented or eliminated" despite the efforts of the defendants, because they were a byproduct of multiorgan failure and COVID-19 pathology.

Finally, Dr. Brusco opines, based on the record, that Plaintiff and her family provided consent for any invasive procedures that took place during her admission, including her intubation, tracheostomy, feeding tube, and surgical debridement of the sacral ulcer. This consent is supported by a record of verbal or telephone conversations with Plaintiff's son (health proxy) to discuss the need for such procedures, as well as written consent forms. As such, Dr. Brusco opines that there were no departures from the standard of care in obtaining informed consent from the patient prior to her intubation, nor from her family after she was intubated.

Additionally, the movants' nursing expert RN Reilly opines on the implementation of pressure ulcer prevention and treatment measures. The Court notes that a registered nurse cannot opine as to proximate causation in a medical context, nor has RN Reilly established the required background to opine on the standard of care for the attending physician or nurse practitioner. However, she has established a foundation to opine as to the standard of nursing care, e.g., Braden score risk assessment and implementation of turning protocols (*see Boltyansky v New York Community Hosp.,* 175 AD3d 1478, 1479 [2d Dept 2019]; *Zak v Brookhaven Mem. Hosp. Med. Ctr.,* 54 AD3d 852, 853 [2d Dept 2008]).

RN Reilly notes that from the date of Plaintiff's admission, she was evaluated as low risk using the Braden scale, because she was not fully bedbound and "required minimal assistance" with weight redistribution or hygiene. RN Reilly opines this evaluation was appropriately changed to "mildly at risk" from March 21 to March

4

[* 4]

23 when she was transferred to the ICU with respiratory failure. She further opines that based on the record, appropriate interventions were undertaken by the nursing and ICU team, including "heel elevation, turning and repositioning and redistribution surfaces," and at all times in the ICU she was on a pressure-relieving mattress.

Based on the submissions, Defendants' experts have established prima facie entitlement to summary judgment on the basis that the NYU Langone attending physician, specialists, and nursing staff acted in accordance with the standard of care in pressure ulcer prevention and treatment, and that Plaintiff's skin breakdown was an unavoidable result of her COVID-19 infection and other comorbidities. Furthermore, the movants established prima facie entitlement to summary judgment on the issue of informed consent.

In opposition, Plaintiff submits an expert affirmation from a licensed physician certified in surgery and vascular surgery. The Court was presented with the signed, unredacted affirmation for *in camera* inspection.

As an initial matter, the Court rejects Defendants' argument that the Plaintiff's expert has not laid a proper foundation to opine on the medical issues in this case. The expert affirms that they have experience as a critical care attending physician and as co-director of the Surgical Intensive Care Unit at Mount Sinai Hospital. The expert affirms that they have "supervised nurses in pressure ulcer prevent and treatment" as an attending physician in a hospital setting, and they have direct experience with the prevention and treatment of decubitus ulcers. The expert further affirms that they have treated hundreds of patients with pressure ulcers, including ventilator-dependent ICU patients, as medical director of a wound care center. The Court finds Plaintiff's expert has established the qualifications to render an opinion on the care and treatment at issue.

Plaintiff's expert counters the opinions of Dr. Brusco and RN Reilly that Plaintiff was appropriately assessed by NYU Langone personnel for her risk of pressure ulcers and treated accordingly from the date of her admission. Plaintiff's expert notes that Dr. Brusco repeatedly discusses Plaintiff's elevated risk of pressure ulcers, saying she had "significant risk factors for skin breakdown" due to her COVID-19 infection. Plaintiff's expert also notes that Plaintiff had obesity and limited mobility. Despite this, Plaintiff was initially assessed with a Braden score of 19 and 20, which indicates very low or no risk and did not prompt the appropriate pressure-relief measures. Plaintiff was assessed as only a mild or moderate risk when she was transferred to the ICU, despite the

5

"triple threat" of COVID-19, ARDS (acute respiratory distress syndrome), and vasopressor medications. Plaintiff's expert notes that it was not until March 25, 2021, when she was already on a ventilator and a stage I sacral wound was discovered, that her Braden score was reassessed as 10 (high risk). Plaintiff's expert opines the risk assessment prior to that was a departure from the standard of care.

Plaintiff's expert also counters the opinion of Dr. Brusco that Plaintiff was given timely and proper infectious disease and surgery consultations. The expert notes that Plaintiff's "persistent fevers resolved immediately" after the surgical debridement on April 16, evincing that the ulcer "was a portal of infection and the source of her sepsis and deterioration." The expert therefore opines that NYU Langone's infectious disease consultations did not properly examine or consider this source of infection when examining the plaintiff a week earlier, and appropriate treatment was therefore delayed and permitted her skin breakdown to worsen.

Additionally, Plaintiff's expert opines that Dr. Kumley, as attending physician in the ICU, failed to properly evaluate and direct treatment for Plaintiff's developing sacral pressure ulcer and other pressure ulcers. The expert opines that the attending physician has the "overall responsibility for the patient's care" and assessing, diagnosing, and directing treatment for the patient's conditions, while nursing staff provide direct care. The expert notes that progress notes throughout Plaintiff's chart made no mention of pressure injuries or marked them "not applicable" up until her sacral ulcer debridement on April 16. Plaintiff's expert opines that Dr. Kumley departed from the standard of care by not addressing her "the need for aggressive pressure ulcer prophylaxis precautions."

On the issue of proximate causation, Plaintiff's expert counters the opinion of Dr. Brusco that Plaintiff's pressure ulcers were "unavoidable," which Plaintiff notes contradicts the fact she was evaluated as only a mild to moderate risk (13-18) on the Braden scale before the development of her first sacral ulcer. The expert also disagrees with the opinions that Plaintiff's "skin breakdown was caused by COVID-19 and its sequelae." Plaintiff's expert opines that Plaintiff's wounds including the stage IV sacral ulcer were "clearly and primarily the result of pressure ulceration," citing to multiple instances in the chart where it is referred to as a "pressure ulcer injury" and treatment recommendations included "offloading all bony prominences, turning and repositioning, and device rotation." While the Defendants suggest Plaintiff's injuries were unavoidable COVID-

6

19 skin manifestations, Plaintiff's expert offers the conflicting opinion that medical literature on skin breakdown associated with COVID-19 is "overwhelmingly superficial skin eruptions and rashes," which are "qualitatively different" than Plaintiff's pressure ulcers, based on the expert's review of photographs and the medical record.

Plaintiff has raised multiple issues of fact on the standard of care, including the expert's opinions on her initial Braden score risk assessment and the timeliness of surgical debridement and infectious disease consults. Plaintiff's expert also counters the opinion that her pressure ulcers were unavoidable complications of her COVID-19 infection, opining that the development and worsening of her injuries could have been prevented if not for the defendants' alleged departures from the standard of care. Viewing the evidence in the light most favorable to the non-moving Plaintiff, these submissions establish issues which must be resolved by a trier of fact.

Notwithstanding the above, Plaintiff's expert raises no issues of fact on the issue of informed consent, nor does Plaintiff address this claim anywhere in the opposition papers. Plaintiff also does not oppose the branch of Defendants' motion to dismiss claims of gross negligence, recklessness, and negligent hiring, to the extent those claims are asserted in the bill of particulars. Accordingly, summary judgment is granted to the movants on the second cause of action for lack of informed consent and any claims of gross negligence, recklessness, and negligent hiring.

It is hereby:

**ORDERED** that Defendants' motion (Seq. No. 1) for an Order, pursuant to CPLR 3212, granting summary judgment and dismissing Plaintiff's complaint against them, is **GRANTED TO THE EXTENT** of dismissing Plaintiff's second cause of action for lack of informed consent, and dismissing any claims of gross negligence, recklessness, and negligent hiring, and the motion is otherwise **DENIED.**

This constitutes the decision and order of this Court.

ENTER.

_____

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

7

[* 7]