REBECCA GEFFNER, Appellant, v NORTH SHORE UNIVERSITY HOSPITAL et al., Respondents, et al., Defendants. [871 NYS2d 617]—

The appeals from the intermediate orders must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (*see Matter of Aho,* 39 NY2d 241, 248 [1976]). The issues raised on the appeals from the intermediate orders are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

The Supreme Court providently exercised its discretion in denying that branch of the plaintiff's motion which was to strike the answer of the defendant North Shore University Hospital (hereinafter North Shore) based on spoliation of evidence. "The court has broad discretion in determining the sanction for spoliation of evidence and may, under the appropriate circumstances, impose a sanction if the destruction occurred through negligence rather than willfulness" (*Molinari v Smith,* 39 AD3d 607, 608 [2007]; *see Dean v Usine Campagna,* 44 AD3d 603, 605 [2007]). Although reluctant to strike a pleading absent willful or contumacious conduct, courts will consider the prejudice resulting from spoliation in determining whether such drastic action is necessary as a matter of elementary fairness (*see Dean v Usine Campagna,* 44 AD3d at 605; *De Los Santos v Polanco,* 21 AD3d 397, 398 [2005]; *Favish v Tepler,* 294 AD2d 396 [2002]). Where a party's negligent loss or destruction of evidence does not deprive its opponent of a means to present or defend against a claim, striking a spoliator's pleading is not warranted (*see*

*Dean v Usine Campagna,* 44 AD3d at 605; *E.W. Howell Co., Inc. v S.A.F. La Sala Corp.,* 36 AD3d 653, 655 [2007]; *De Los Santos v Polanco,* 21 AD3d at 397-398). Here, there was no showing that North Shore willfully and contumaciously discarded specimens, samples, blood, bodily fluids, or any other physical matter of the plaintiff's decedent which it was directed to preserve pursuant to two temporary restraining orders (*cf. DiDomenico v C & S Aeromatik Supplies,* 252 AD2d 41, 53 [1998]). Furthermore, the failure to preserve certain specimens did not prevent the plaintiff from proving her case (*see Denoyelles v Gallagher,* 40 AD3d 1027 [2007]; *Iannucci v Rose,* 8 AD3d 437, 438 [2004]).

The Supreme Court properly denied that branch of the plaintiff's motion which was to punish North Shore for civil contempt. In order to prevail on a motion to punish a party for civil contempt, the movant must demonstrate that the party charged with the contempt violated a clear and unequivocal court order, thereby impairing or prejudicing a right of another party to the litigation (*see* Judiciary Law § 753 [A] [3]; *McCain v Dinkins,* 84 NY2d 216, 225-226 [1994]; *Matter of McCormick v Axelrod,* 59 NY2d 574, 584 [1983]; *Goldsmith v Goldsmith,* 261 AD2d 576, 577 [1999]). Here, the plaintiff failed to demonstrate that North Shore's conduct in discarding certain specimens in violation of two temporary restraining orders was calculated to or actually did defeat, impair, impede, or prejudice her rights or remedies in any way (*see Matter of Congregation Yetev Lev D'Satmar v Kahana,* 308 AD2d 447, 448 [2003]; *City of Poughkeepsie v Hetey,* 121 AD2d 496, 497 [1986]).

The Supreme Court properly granted the separate cross motions of the defendants Steve W. Rucker, Jim N. Hilepo, and J. Ezra Haller (hereinafter the defendant doctors), and the defendant North Shore for summary judgment dismissing the complaint insofar as asserted against each of them. The evidence submitted by the movants, including the affirmation and affidavit of North Shore's experts, James Strauchen and Jonas M. Goldstone, both physicians subcertified in hematology and medical oncology, in opposition to the plaintiff's motion and in support of their respective cross motions for summary judgment demonstrated, prima facie, that the defendant doctors did not depart from good and accepted medical practice (*see* CPLR 3212 [b]; *Alvarez v Prospect Hosp.,* 68 NY2d 320, 324 [1986]; *Andre v Pomeroy,* 35 NY2d 361, 364 [1974]; *Hernandez-Vega v Zwanger-Pesiri Radiology Group,* 39 AD3d 710, 711 [2007]). The burden then shifted to the plaintiff to lay bare her proof and to demonstrate the existence of a triable issue of fact (*see Rosen v John J.*

*Foley Skilled Nursing Facility,* 45 AD3d 558 [2007]; *Micciola v Sacchi,* 36 AD3d 869, 871 [2007]; *Kaplan v Hamilton Med. Assoc.,* 262 AD2d 609, 610 [1999]). The requisite elements of proof in a medical malpractice action are a deviation or departure from accepted community standards of practice and evidence that such departure was a proximate cause of injury or damage (*see Spensieri v Lasky,* 94 NY2d 231, 238 [1999]; *Toth v Community Hosp. at Glen Cove,* 22 NY2d 255, 262 [1968]; *Rosen v John J. Foley Skilled Nursing Facility,* 45 AD3d 558 [2007]; *Rebozo v Wilen,* 41 AD3d 457, 458 [2007]; *Mosezhnik v Berenstein,* 33 AD3d 895, 896 [2006]). The plaintiff alleged that during the decedent's admission to North Shore, the defendant doctors engaged in numerous acts and omissions that were a competent producing cause of the decedent's death, including the misdiagnoses of the decedent as suffering from, inter alia, adenocarcinoma, the failure timely to diagnose and to treat an infection, and the overadministration of drugs. To support her allegations, the plaintiff submitted the expert affidavit of Charles Phillips, a physician certified in emergency medicine. Dr. Phillips' affidavit was of no probative value, however, as it contained opinions outside his area of expertise and did not establish a foundation for his opinions (*see Glazer v Choong-Hee Lee,* 51 AD3d 970 [2008]; *Mustello v Berg,* 44 AD3d 1018, 1018-1019 [2007]; *Behar v Coren,* 21 AD3d 1045, 1046-1047 [2005]). In addition, the plaintiff submitted the affidavit of a pharmacist who rendered an opinion that drug overdosing was a proximate cause of the decedent's pain and suffering and death. Even if the pharmacist were qualified to do so, he failed to render any expert opinion as to the appropriate standard of care for physicians in the administration and use of drugs in 2002 and what, if any, departures from that standard of care were committed by the defendant doctors (*see Mustello v Berg,* 44 AD3d at 1019; *Behar v Coren,* 21 AD3d at 1047; *LaMarque v North Shore Univ. Hosp.,* 227 AD2d 594, 594-595 [1996]). Finally, the plaintiff submitted the expert affirmations of Howard C. Adelman, a physician certified in clinical pathology and cytopathology, which alleged that the defendant doctors misdiagnosed the decedent as suffering from myelodysplastic syndrome, acute myeloid leukemia, and adenocarcinoma. Dr. Adelman's affirmations were insufficient to raise a triable issue of fact with respect to the alleged misdiagnoses since they failed to address the evidence relied upon by North Shore's experts in rendering their opinions that the diagnoses were correct (*see Germaine v Yu,* 49 AD3d 685, 687 [2008]; *Fhima v Maimonides Med. Ctr.,* 269 AD2d 559, 560 [2000]).

The defendant North Shore established its prima facie entitle-

ment to judgment as a matter of law by demonstrating that the plaintiff's decedent was treated only by private attending physicians who were not its employees and, thus, it could not be held vicariously liable for any alleged malpractice (*see Rose v Horton Med. Ctr.,* 29 AD3d 977 [2006]; *Woodard v LaGuardia Hosp.,* 282 AD2d 529, 530 [2001]). The evidence submitted by the plaintiff in opposition failed to refute the opinions of North Shore's experts that no independent acts of negligence were committed by any employees of North Shore (*see Romano v Stanley,* 90 NY2d 444, 452 [1997]; *Alvarez v Prospect Hosp.,* 68 NY2d 320 [1986]; *Woodard v LaGuardia Hosp.,* 282 AD2d at 530).

The plaintiff's remaining contentions are without merit. Spolzino, J.P., Covello, Angiolillo and Chambers, JJ., concur.