■ MICHAEL FEUER, Individually and as Administrator of the Estate of DEBORAH BODEN, Deceased, Respondent, v MICHAEL NG, M.D., et al., Appellants. [24 NYS3d 198]—

In an action, inter alia, to recover damages for medical malpractice and wrongful death, etc., the defendant Michael Ng appeals, as limited by his brief, from so much of an order of the Supreme Court, Kings County (Steinhardt, J.), dated April

7, 2014, as denied his motion for summary judgment dismissing the complaint insofar as asserted against him, and the defendant New York Epilepsy & Neurology separately appeals, as limited by its brief, from so much of the same order as denied that branch of its motion which was for summary judgment dismissing so much of the complaint as alleged that it was vicariously liable for the alleged medical malpractice of the defendant Michael Ng.

Ordered that the order is reversed insofar as appealed from, on the law, with one bill of costs, the motion of the defendant Michael Ng for summary judgment dismissing the complaint insofar as asserted against him is granted, and that branch of the motion of the defendant New York Epilepsy & Neurology which was for summary judgment dismissing so much of the complaint as alleged that it was vicariously liable for the alleged medical malpractice of the defendant Michael Ng is granted.

The plaintiff commenced this action alleging, inter alia, that the defendants committed medical malpractice and caused the wrongful death of his wife (hereinafter the decedent). Prior to her death, the decedent suffered from a neurological condition known as pseudotumor cerebri, which involves, among other symptoms, elevated pressure in a patient's head that causes severe headaches. The decedent was treated for this condition by nonparty Moeen Din, a neurologist at the defendant neurology practice, New York Epilepsy & Neurology (hereinafter NYEN). The decedent was treated by Din at NYEN from January through August of 2010. After Din left NYEN, the decedent was referred to the defendant Michael Ng, who was also a neurologist at NYEN. Her first and only physical appointment with Ng occurred on February 16, 2011. During that appointment, Ng recommended that the decedent undergo a spinal tap because her pseudotumor cerebri symptoms were persisting. The spinal tap was performed at Staten Island University Hospital on March 3, 2011, and the results were conveyed to Ng.

In the weeks following the spinal tap, Ng prescribed medications to the decedent over the phone on a few occasions. During their last telephone conversation, the decedent complained of leg and back pain that had developed since the spinal tap. Over the telephone, based on the decedent's complaints, Ng diagnosed her pain as radiculopathy related to the spinal tap, and prescribed medications based upon this diagnosis. Two days after this conversation, the decedent suddenly died. The cause of her death was unknown until an autopsy revealed

that the decedent had suffered an acute pulmonary embolism caused by deep vein thrombosis of her left calf.

Ng and NYEN separately moved for summary judgment dismissing the complaint insofar as asserted against each of them. They argued, in relevant part, that Ng did not deviate from the accepted standard of care for a neurologist treating a patient in the weeks following a spinal tap and that, in any event, any alleged deviation was not a proximate cause of the decedent's death since, under the circumstances presented here, deep vein thrombosis would not have been suspected or detected. In the order appealed from, the Supreme Court denied Ng's motion and denied that branch of NYEN's motion which was for summary judgment dismissing so much of the complaint as alleged that it was vicariously liable for Ng's alleged medical malpractice.

The elements of a cause of action to recover damages for medical malpractice include a deviation or departure from the accepted standard of care and evidence that the deviation or departure was a proximate cause of injury or damage (see Arocho v D. Kruger, P.A., 110 AD3d 749, 750 [2013]; Gillespie v New York Hosp. Queens, 96 AD3d 901 [2012]; Hamilton v Good Samaritan Hosp. of Suffern, N.Y., 73 AD3d 697 [2010]). To prevail on a motion for summary judgment in a medical malpractice action, the defendant must "make a prima facie showing either that there was no departure from accepted medical practice, or that any departure was not a proximate cause of the patient's injuries" (Matos v Khan, 119 AD3d 909, 910 [2014]). In response, the plaintiff need only raise a triable issue of fact regarding "the element or elements on which the defendant has made its prima facie showing" (Mitchell v Grace Plaza of Great Neck, Inc., 115 AD3d 819, 819 [2014]; see Stukas v Streiter, 83 AD3d 18 [2011]).

Here, Ng established his prima facie entitlement to judgment as a matter of law by submitting an affirmation of an expert neurologist who, after reviewing the relevant medical records and deposition testimony, opined that Ng did not deviate from the accepted standard of care in his treatment of the decedent following her spinal tap (see Mitchell v Grace Plaza of Great Neck, Inc., 115 AD3d at 819-820). Specifically, the expert neurologist indicated that Ng had no reason to suspect deep vein thrombosis and that his working diagnosis of radiculopathy was appropriate given the decedent's symptoms and the context in which she developed them following the spinal tap. Based on his review of the deposition testimony and medical records, the expert neurologist further opined that it was not

necessary for Ng to physically examine the decedent before treating her for radiculopathy. The expert neurologist also opined that any alleged deviation by Ng from the accepted standard of care was not a proximate cause of the decedent's injuries and death. He stated that, under the circumstances presented here, even if Ng had physically examined the decedent, he would have had no reason to suspect deep vein thrombosis.

In opposition, the plaintiff failed to raise a triable issue of fact. The plaintiff submitted an affidavit of a physician specializing in the field of internal medicine who opined that Ng should have known that radiculopathy was the wrong diagnosis and should have considered a broader array of potential problems as part of a differential diagnosis. The plaintiff's expert, however, was not a neurologist, and the affidavit failed to indicate whether the plaintiff's expert had any specific training or expertise in neurology, or particularized knowledge as to the treatment of a patient after a spinal tap. The affidavit did not indicate that the plaintiff's expert had familiarized himself or herself with the relevant literature or otherwise set forth how he or she was, or became, familiar with the applicable standards of care for a neurologist treating a patient after a spinal tap. Accordingly, the opinion of the plaintiff's expert was of no probative value to the extent that the expert opined that Ng should have known that the decedent's symptoms were not indicative of radiculopathy and that Ng deviated from the standard of neurological care in how he treated the decedent for that condition after the spinal tap (*see Tsimbler v Fell*, 123 AD3d 1009 [2014]; *Shectman v Wilson*, 68 AD3d 848 [2009]; *cf. Erbstein v Savasatit*, 274 AD2d 445 [2000]).

Moreover, while the plaintiff's expert was qualified, as an internist, to opine on the general standard of care for a doctor treating and diagnosing a patient with leg pain, the expert's affidavit failed to raise a triable issue of fact as to whether Ng's alleged departures from that standard of care proximately caused the decedent's injuries and death. The affidavit was conclusory and speculative on the issue of proximate cause, and failed to address the specific assertions made by Ng's expert (*see Brinkley v Nassau Health Care Corp.*, 120 AD3d 1287 [2014]; *Forrest v Tierney*, 91 AD3d 707 [2012]; *Graziano v Cooling*, 79 AD3d 803 [2010]). The plaintiff's remaining contentions regarding the expert submissions are without merit. Accordingly, the Supreme Court should have granted Ng's motion for summary judgment dismissing the complaint insofar as asserted against him.

The Supreme Court also should have granted that branch of NYEN's motion which was for summary judgment dismissing so much of the complaint as alleged that it was vicariously liable for Ng's alleged medical malpractice. Because there are no triable issues of fact with respect to Ng's alleged medical malpractice, no basis exists for proceeding against NYEN under a vicarious liability theory (*see Goler v Sonsky*, 115 AD3d 644 [2014]). Leventhal, J.P., Dickerson, Maltese and Duffy, JJ., concur.