■ MICHELLE DiLORENZO, Respondent, v JOHN ZASO et al., Appellants. [50 NYS3d 503]—

In an action to recover damages for medical malpractice, the defendant John Zaso appeals, and the defendants Beth Gottlieb and North Shore-Long Island Jewish Health Systems, doing business as Schneider Children's Hospital, separately appeal, as limited by their respective briefs, from so much of an order of the Supreme Court, Nassau County (Cozzens, Jr., J.), entered January 6, 2015, as denied their separate motions for summary judgment dismissing the complaint insofar as asserted against each of them.

Ordered that the order is reversed, on the law, with one bill of costs payable to the appellants appearing separately and filing separate briefs, and the motion of the defendant John Zaso and the separate motion of the defendants Beth Gottlieb and North Shore-Long Island Jewish Health Systems, doing business as Schneider Children's Hospital, for summary judgment dismissing the complaint insofar as asserted against each of them are granted.

The plaintiff commenced this action against John Zaso, her former pediatrician, Beth Gottlieb, a pediatric rheumatologist, and North Shore-Long Island Jewish Health Systems, doing business as Schneider Children's Hospital (hereinafter North Shore), alleging medical malpractice with respect to treatment she received from the defendants in June 2003. The plaintiff further alleged that as a result of the defendants' medical malpractice, she developed acute rheumatic fever, which was manifested by Sydenham's chorea and mitral valve regurgitation. Zaso moved for summary judgment dismissing the complaint insofar as asserted against him, and Gottlieb and North Shore separately moved for the same relief as to them. The Supreme Court denied both motions on the basis that the

plaintiff had raised triable issues of fact. Zaso appeals, and Gottlieb and North Shore separately appeal.

The elements of a medical malpractice cause of action are a deviation or departure "from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (*Stukas v Streiter*, 83 AD3d 18, 23 [2011]). A defendant moving for summary judgment in a medical malpractice case must "demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]), with respect to at least one of these elements (*see Cham v St. Mary's Hosp. of Brooklyn*, 72 AD3d 1003, 1004 [2010]). "In pursuance of its prima facie burden of proof, the moving defendant is required to address the factual allegations set forth in the plaintiffs' bill of particulars with reference to the moving defendant's alleged acts of negligence and the injuries suffered with competent medical proof" (*id.* at 1005). "[B]are conclusory assertions" by "defendants that they did not deviate from good and accepted medical practices, with no factual relationship to the alleged injury, do not establish that the cause of action has no merit so as to entitle defendants to summary judgment" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). In opposing a motion for summary judgment in a medical malpractice case, a plaintiff needs "only to rebut the moving defendant's prima facie showing" (*Stukas v Streiter*, 83 AD3d at 23).

"Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions" (*Feinberg v Feit*, 23 AD3d 517, 519 [2005]). "General and conclusory allegations of medical malpractice, however, unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant physician's summary judgment motion" (*Myers v Ferrara*, 56 AD3d 78, 84 [2008]; *see Shashi v South Nassau Communities Hosp.*, 104 AD3d 838, 839 [2013]; *Goldsmith v Taverni*, 90 AD3d 704, 705 [2011]). Rather, the plaintiff's expert must specifically address the defense expert's allegations (*see Feuer v Ng*, 136 AD3d 704, 707 [2016]; *Berthen v Bania*, 121 AD3d 732, 733 [2014]; *Swanson v Raju*, 95 AD3d 1105, 1107 [2012]; *Geffner v North Shore Univ. Hosp.*, 57 AD3d 839, 842 [2008]).

"[A] medical expert need not be a specialist in a particular field in order to testify regarding accepted practices in that field" (*Behar v Coren*, 21 AD3d 1045, 1046-1047 [2005] [internal quotation marks omitted]). However, the witness must "be possessed of the requisite skill, training, education, knowledge or

experience from which it can be assumed that the opinion rendered is reliable" (*id.* at 1047 [internal quotation marks omitted]). "Thus, where a physician opines outside his or her area of specialization, a foundation must be laid tending to support the reliability of the opinion rendered" (*id.*). Where no such foundation is laid, the expert's opinion is "of no probative value" (*Feuer v Ng*, 136 AD3d at 707; *see Tsimbler v Fell*, 123 AD3d 1009, 1009-1010 [2014]; *Shashi v South Nassau Communities Hosp.*, 104 AD3d at 839; *Geffner v North Shore Univ. Hosp.*, 57 AD3d at 842; *Mustello v Berg*, 44 AD3d 1018, 1018-1019 [2007]).

Here, Zaso correctly contends that he demonstrated his prima facie entitlement to judgment as a matter of law and that the plaintiff did not raise a triable issue of fact in opposition (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324). The plaintiff alleged that Zaso committed malpractice by: (1) failing to test, diagnose, and treat her for strep throat on June 6, 2003, and (2) failing to consider her history of strep infections and include rheumatic fever in the differential diagnosis on June 6, 2003. As to the failure to test, diagnose, and treat strep throat, Zaso did not meet his prima facie burden on the departure element, as his moving papers demonstrated the existence of a triable issue of fact as to whether the plaintiff complained of a sore throat to him in June 2003 (*see id.*; *Stukas v Streiter*, 83 AD3d at 23; *Cham v St. Mary's Hosp. of Brooklyn*, 72 AD3d at 1004). Zaso met his prima facie burden with respect to causation, however, as his experts both opined in their affirmations that the strep infection that triggered the plaintiff's rheumatic fever predated June 6, 2003, as shown by the fact that the plaintiff was already experiencing joint pain by that time. Thus, even if Zaso departed from the accepted standard of care in failing to test the plaintiff for strep throat on June 6, 2003, that failure did not proximately cause the injuries that she has alleged in this action, namely, rheumatic fever manifested by Sydenham's chorea and mitral valve regurgitation (*see Stukas v Streiter*, 83 AD3d at 23). As to the failure to consider the plaintiff's history of strep infections and include rheumatic fever in the differential diagnosis, Zaso's experts opined that there was no departure from the standard of care in light of the fact that the plaintiff did not meet the diagnostic criteria for rheumatic fever, and Zaso thus met his prima facie burden with respect to the departure element (*see id.*; *Cham v St. Mary's Hosp. of Brooklyn*, 72 AD3d at 1004).

In response to the foregoing prima facie showing on the causation element with respect to the failure to test, diagnose,

and treat strep throat and the departure element with respect to a failure to consider the history of strep infections and include rheumatic fever in the differential diagnosis, the plaintiff failed to raise any triable issues of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324). First, as to the issue of causation with respect to Zaso's failure to test, diagnose, and treat strep throat, the plaintiff's expert did not address Zaso's experts' opinions that such failure did not proximately cause the plaintiff's injuries because the strep infection that triggered the plaintiff's rheumatic fever predated June 6, 2003 (*see Feuer v Ng*, 136 AD3d at 707; *Berthen v Bania*, 121 AD3d at 733; *Swanson v Raju*, 95 AD3d at 1107; *Geffner v North Shore Univ. Hosp.*, 57 AD3d at 842). As to the failure to consider the plaintiff's history of strep infections and include rheumatic fever in the differential diagnosis, the plaintiff's expert relied on different diagnostic criteria from those relied on by Zaso's experts and failed specifically to address the diagnostic criteria cited by Zaso's experts or to opine that such criteria were inapplicable (*see Feuer v Ng*, 136 AD3d at 707; *Berthen v Bania*, 121 AD3d at 733; *Swanson v Raju*, 95 AD3d at 1107; *Geffner v North Shore Univ. Hosp.*, 57 AD3d at 842). Contrary to the plaintiff's contention, her expert did not implicitly address the diagnostic criteria cited by Zaso's experts. The plaintiff's expert also opined that Zaso should have ordered an anti-strep titer to rule out rheumatic fever, but failed to explain why, if the plaintiff did not meet the diagnostic criteria for rheumatic fever as Zaso's experts contended, an anti-strep titer to rule out rheumatic fever would have been necessary (*see Feuer v Ng*, 136 AD3d at 707; *Berthen v Bania*, 121 AD3d at 733; *Swanson v Raju*, 95 AD3d at 1107; *Geffner v North Shore Univ. Hosp.*, 57 AD3d at 842). Accordingly, the plaintiff failed to raise a triable issue of fact in response to Zaso's prima facie showing that he was entitled to summary judgment, and the Supreme Court should have granted Zaso's motion for summary judgment dismissing the complaint insofar as asserted against him.

As to Gottlieb and North Shore, the plaintiff alleged that these defendants committed malpractice by failing to obtain a full medical history and failing to test for strep throat, misdiagnosing the plaintiff with benign joint pains, and providing misleading follow-up instructions. Gottlieb and North Shore demonstrated, prima facie, that they did not depart from the accepted standard of care with respect to these allegations (*see Stukas v Streiter*, 83 AD3d at 23; *Cham v St. Mary's Hosp. of Brooklyn*, 72 AD3d at 1004). Specifically, their expert, a pediatric rheumatologist, opined that because strep and other infections were common in children, Gottlieb and the staff at

North Shore were not required, under the accepted standard of care, to obtain information about the plaintiff's history of strep infections or to test the plaintiff for strep. This expert further opined that the diagnostic criteria for rheumatic fever included both a prior strep infection and at least one major manifestation. Since the plaintiff had no major manifestations of rheumatic fever on June 13, 2003, according to Gottlieb's and North Shore's expert, she could not have been diagnosed with rheumatic fever at that time. Thus, according to their expert, Gottlieb did not deviate from the accepted standard of care in diagnosing the plaintiff with probable benign joint pain and in providing corresponding follow-up instructions. This evidence demonstrated, prima facie, that Gottlieb and North Shore did not depart from the accepted standard of care as alleged by the plaintiff (*see Cham v St. Mary's Hosp. of Brooklyn*, 72 AD3d at 1005). However, Gottlieb's and North Shore's showing with respect to the causation element of medical malpractice was conclusory and insufficient to meet their prima facie burden on that element (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d at 853; *Stukas v Streiter*, 83 AD3d at 23).

In opposition, the plaintiff failed to raise a triable issue of fact, as her expert's opinion "was of no probative value" (*Feuer v Ng*, 136 AD3d at 707). Gottlieb and North Shore correctly contend that the plaintiff's expert, a pediatrician and neonatologist, did not lay the requisite foundation to render an opinion on Gottlieb's actions as a rheumatologist (*see Behar v Coren*, 21 AD3d at 1047). Contrary to the plaintiff's contention, her allegations against these defendants were based not on Gottlieb having improperly treated strep throat, but on his alleged failure to conduct a proper rheumatological exam, failure to diagnose rheumatic fever, and improper follow-up instructions in light of the misdiagnosis. The plaintiff's expert did not specify in his affirmation whether he had any specific training or expertise in rheumatology or state that he had familiarized himself with the relevant literature or otherwise set forth how he was, or became, familiar with the applicable standards of care in this specialized area of practice (*see id.* at 1046). Accordingly, the plaintiff's expert's opinion was of no probative value and was insufficient to defeat Gottlieb's and North Shore's prima facie showing, and the Supreme Court should have granted their motion for summary judgment dismissing the complaint insofar as asserted against them (*see Feuer v Ng*, 136 AD3d at 707). Mastro, J.P., Chambers, Miller and Maltese, JJ., concur.