**Rosario v Manouel**

2024 NY Slip Op 33630(U)

October 10, 2024

Supreme Court, Kings County

Docket Number: Index No. 504916/2021

Judge: Consuelo Mallafre Melendez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 15 of the Supreme Court of the State of NY, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 10th day of October 2024.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------------X
MICHAEL ROSARIO,

      Plaintiff,

  -against-

MEHRAN MANOUEL, M.D., ABLE ORTHOPEDICS & SPORTS MEDICINE, P.C., NORTHWELL HEALTH, INC., LONG ISLAND JEWISH FOREST HILLS, a division of Long Island Jewish Medical Center a/k/a Long Island Jewish Medical Center, MERGIE DESIR, M.D., MERGIE DESIR, M.D., P.L.L.C., JUSTIN VIROJANAPA, D.O., TIMOTHY WHITE, M.D., and NORTH SHORE UNIVERSITY HOSPITAL,

      Defendants.
-------------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 504916/2021
Mo. Seq. 4 & 5

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

NYSCEF #s: Seq.4: 193 – 195, 196 – 208, 211 – 212, 213 – 218, 227

        Seq. 5: 172 – 174, 175 – 192, 219 – 220, 221 – 226, 228

Defendants Mehran Manouel, M.D. ("Dr. Manouel") and Able Orthopedics & Sports Medicine, P.C.[1] move (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing all claims and causes of action against them.

Defendants Mergie Desir, M.D. ("Dr. Desir") and Mergie Desir, M.D., P.L.L.C.[2] separately move (Seq. No. 5) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor, dismissing all claims against them, and removing them from the caption of this action. Plaintiff opposes the motions of both Dr. Manouel and Dr. Desir.

---

[1] As admitted by the movants and in Dr. Manouel's testimony, Able Orthopedics & Sports Medicine is the name of his professional practice. Dr. Manouel and Able Orthopedics move jointly for summary judgment as an individual and corporate entity.

[2] Dr. Desir also moves for summary judgment individually and as a professional limited liability company.

1

[* 1]

Plaintiff commenced this action on March 1, 2021, asserting claims of medical malpractice and lack of informed consent in connection with diagnosis and treatment of a spinal epidural abscess. Plaintiff also asserts claims against non-moving co-defendants Long Island Jewish Forest Hills ("LIJ"), North Shore University Hospital, and other individual physicians.

On December 13, 2024, Plaintiff presented to the emergency department of LIJ with a chief complaint of severe back pain beginning one week earlier. He was 40 years old with a medical history including diabetes mellitus. An x-ray of Plaintiff's lumbar spine, ordered by the attending ER physician, showed mild degenerative joint disease. Orthopedic surgery consult Dr. Manouel performed an examination, assessed Plaintiff with a "lumbar sprain, left sided SI [sacroiliac] joint pain/left paravertebral lower lumbar muscle spasm," and administered a trigger point injection of 40mg depomedrol (steroid) and 5cc lidocaine (painkiller). Plaintiff was discharged from LIJ the same day with anti-inflammatory medications and muscle relaxants. He was advised to schedule a lumbar spine MRI and follow up with Dr. Manouel's office.

On December 15, Plaintiff was examined by his primary care physician, Dr. Desir, who recorded he was discharged from the hospital two days earlier and still had "dull, pulsating" lower back pain. She noted his "significant" muscle spasm, limited range of motion, decreased quadriceps strength, and that he slouched and walked with a limp. She prescribed Tramadol, continued muscle relaxants, and referred him to see an orthopedist with a follow-up appointment in her office in two weeks.

Plaintiff's wife, Ileanna Santana ("Ms. Santana"), testified that she called Dr. Desir's office on the evening of December 17 between 8:00 p.m. and 9:00 p.m., at which time her husband was unable to stand, walk, or control his bladder. According to Dr. Desir's office notes and testimony, Ms. Santana reported that evening that her husband was shaking uncontrollably; Dr. Desir advised them to discontinue muscle relaxants and come in on December 19 if his symptoms worsened.

Plaintiff returned to the emergency department of LIJ the following morning at approximately 10:00 a.m. with back pain, spasms, and difficulty ambulating. An MRI of the lumbar spine revealed an epidural abscess (infection in the spine) and compression of nerve roots. He was then transferred to North Shore

2

[* 2]

University Hospital where he arrived at approximately 7:30 p.m. and was treated overnight with antibiotics. On December 19, he underwent L3-L4 laminectomies to evacuate the spinal epidural abscess. Following the surgery, Plaintiff reported difficulty breathing and upper extremity weakness. An MRI of the neuro-axis revealed he had a larger cervicothoracolumbar epidural abscess, resulting in spinal canal stenosis. He underwent a second surgery to evacuate the abscess at C1-C4. He remained hospitalized in the neurosurgical ICU with various complications and was ultimately discharged to Mount Sinai on January 23, 2019 for rehabilitation. He remains paralyzed below the rib cage with upper extremity weakness.

Plaintiff alleges that Dr. Manouel and Dr. Desir departed from accepted standards of medical care in their assessment and treatment of his symptoms. He further alleges that these departures proximately caused a delay in diagnosis and treatment of the spinal epidural abscess and allowed his condition to worsen.

"In determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party" (*Stukas v Streiter,* 83 AD3d 18, 22 [2d Dept 2011]). In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department:

> "The elements of a medical malpractice cause of action are a deviation or departure from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries. When moving for summary judgment, a defendant provider has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby. In order to sustain this burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's bill of particulars. In opposition, the plaintiff must demonstrate the existence of a triable issue of fact as to the elements on which the defendant has met his or her initial burden. General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant's summary judgment motion. Although summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions, expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023] [internal quotation marks and citations omitted].

3

[* 3]

First, in support of his motion, Dr. Manouel submits an expert affirmation from Michael J. Bronson, M.D. ("Dr. Bronson"), a licensed physician certified in orthopedic surgery, and an expert affirmation from William Mandell, M.D. ("Dr. Mandell"), a licensed physician certified in internal medicine and infectious diseases.

Based on the record and his relevant expertise, Dr. Bronson opines that Dr. Manouel acted in accordance with the standard of care when he examined and treated Plaintiff on December 13, 2018. Dr. Bronson notes that Dr. Manouel reviewed the x-rays of the lumbar spine which had already been ordered by the attending physician. Dr. Manouel also physically examined the patient and assessed him as "neurovascularly intact," recording that he had local point tenderness to palpation, no numbness, and no difficulty walking. The expert opines that the standard of care in these circumstances requires the orthopedic specialist to "first assess whether the patient has isolated back pain, meaning pain affecting the muscles or ligaments alone, or radiculopathy, meaning nerve pressure." Dr. Bronson further states that "mechanical back pain," compared to radiculopathy, is less severe and not a sign of spinal epidural abscess. The expert opines that Dr. Manouel conducted a "complete and thorough examination" of Plaintiff's lower extremities, range of motion, and sensory levels. In Dr. Bronson's opinion, Dr. Manouel appropriately concluded from Plaintiff's symptoms that he had mechanical back pain and did not exhibit "any focal neurological deficits" such as muscle weakness, numbness, or lack of reflexes. As such, the expert opines that Plaintiff had no signs of a spinal epidural abscess that required "urgent or emergent treatment," and the standard of care did not require any additional MRI or CT scan at that time.

In Dr. Bronson's opinion, trigger point injections of steroids are an appropriate treatment option within the standard of care for mechanical back pain, and their use is not contraindicated by the patient's history of diabetes. Dr. Bronson opines that the trigger point injections were performed in a sterile and appropriate manner. He further opines that Plaintiff's plan of care for outpatient follow-up was appropriate and that there was no reason to admit him to the hospital for further testing or treatment as of December 13.

Further, Dr. Bronson opines that trigger point injections cannot cause or exacerbate a spinal epidural abscess, because they are injected to the muscle and not the spine. He therefore opines that the injection and medications involved were not a proximate cause of Plaintiff's subsequent injuries.

4

Dr. Bronson opines briefly that there is "no merit" to any claims against Dr. Manouel related to examination, failure to treat, or delayed diagnosis or treatment on December 18, because he "did not treat [Plaintiff] on December 18, 2018, as per the medical records and deposition testimony."

On the issue of informed consent, Dr. Bronson opines that Dr. Manouel properly discussed the injections with Plaintiff and his wife. He bases this opinion on the defendant's testimony that he discussed the injections with them and the alternatives to this treatment, i.e., being discharged with oral medication only. Dr. Manouel testified that Plaintiff then agreed to the trigger point injection. The expert notes that LIJ does not require a signed consent form for this procedure, so there is no detailed documentation of his consent in the record.

The movant's infectious disease expert, Dr. Mandell, also opines that "back pain is an extremely common symptom among patients to an emergency department" and that ordering a blood test, CT scan, and/or MRI is not indicated unless other symptoms are present such as fever, chills, body aches, or loss of appetite. Dr. Mandell opines that Dr. Manouel examined and treated Plaintiff in accordance with the standard of care because Plaintiff did not present with any of these additional symptoms or with neurological deficits.

Dr. Mandell further opines that a spinal epidural abscess cannot be caused or exacerbated by the steroid injection administered by Dr. Manouel. The expert opines that the injection was to the muscle area, not into the spine or epidural space of the spine, and it was not deep enough to cause a spinal epidural abscess, nor worsen or mask the symptoms of an existing infection.

Dr. Mandell also notes that Dr. Manouel "neither saw nor treated the patient again after December 13, 2018" and therefore opines that Plaintiff's claims regarding December 18 treatment should be dismissed as to Dr. Manouel.

Based on the submissions, Dr. Manouel has established prima facie entitlement to summary judgment on the issue of liability in his treatment of Plaintiff. The expert opinions set forth that on Dr. Manouel's orthopedic examination of Plaintiff, his assessment that he had mechanical back pain, and his administration of trigger point injections were reasonable and within good and accepted medical practice. The experts also establish prima facie that the trigger point injections of depomedrol and lidocaine given by Dr. Manouel did not cause or exacerbate

5

Plaintiff's spinal epidural abscess. The burden therefore shifts to Plaintiff to raise an issue of fact.

Dr. Manouel takes the position that his only involvement in Plaintiff's treatment was on December 13. In Plaintiff's amended bill of particulars (served prior to this motion and addressed by the movants), Plaintiff alleges that Dr. Manouel was also present at LIJ when he was readmitted on December 18, that the doctor was informed of Plaintiff's updated condition and symptoms, and that he failed to timely order appropriate tests including a full MRI of the spine. The basis for this allegation is the deposition transcript of Ms. Santana, who testified that she saw Dr. Manouel at the hospital on December 18 and "told him about everything." However, the conflict in testimony over whether that conversation occurred is not material, because it is undisputed that Dr. Manouel did not examine, consult, treat, or make any medical recommendations to Plaintiff. There is nothing in the hospital record indicating that Dr. Manouel had any role in Plaintiff's treatment on that date. Therefore, Dr. Manouel has established prima facie entitlement to summary judgment on any claims against him related to medical treatment on December 18.

Notwithstanding the above, Dr. Manouel fails to meet his prima facie burden on the informed consent cause of action. The orthopedic expert's opinion on consent is based solely on Dr. Manouel's testimony that he discussed "what the procedure is, and what the nature of this injection is and why I'm doing it" with Plaintiff and his wife, and that Plaintiff agreed to the trigger point injections. Plaintiff's wife recalls this conversation only to the extent that the doctor told them what medications he was administering and that they would relieve his pain after she asked for more information, but she testified that he did not explain potential risks or alternatives. This differing testimony presents an issue of fact in the record that precludes a finding of summary judgment as a matter of law (*see Palmiero v Luchs,* 202 AD3d 989 [2d Dept 2022] ["the plaintiff's deposition testimony indicates that neither doctor ever explained the risks and benefits of, or alternatives to the injections"]. Such conflicts in testimony must be resolved by a jury (*id.,* citing *Lavi v NYU Hosps. Ctr.,* 133 AD3d 830, 831 [2d Dept 2015]). The fact the hospital does not require written consent for trigger point injections does not support a holding that this procedure does not fall under the scope of Public Health Law § 2805-d as a matter of law.

In opposition to Dr. Manouel's motion, Plaintiff submits an expert affirmation from a licensed physician

6

[name of expert redacted], certified in orthopedic surgery. A signed, unredacted copy of the affirmation has been provided to the Court for *in camera* inspection.

As an initial matter, the Court finds Plaintiff's expert has established sufficient qualifications to opine on the alleged malpractice at issue. An expert opinion need not be provided by a specialist, but the expert must demonstrate that they are "possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered is reliable" (*DiLorenzo v Zaso,* 148 AD3d 1111, 1112-1113 [2d Dept 2017]; *see also Cerrone v North Shore-Long Is. Jewish Health Sys, Inc.,* 197 AD3d 449 [2d Dept 2021]). The orthopedic surgeon sets forth that they have background and experience in the standard of care for administering steroid trigger point injections and the risk factors of such injections. Contrary to the movant's argument in reply, the fact Plaintiff's expert is not an infectious disease specialist does negate their ability to opine on the appropriateness and risk factors of such injections in the context of an immuno-compromised patient or suspected spinal abscess, nor their opinion on whether Dr. Manouel complied with the standard of care.

Plaintiff's expert opines that on December 13, Dr. Manouel departed from the standard of care by administering the steroid trigger point injection to a diabetic, immuno-compromised patient who had not had an MRI, blood test, or infectious disease workup. The expert counters the opinions of Dr. Bronson and Dr. Mandell that an infectious or inflammatory cause of Plaintiff's back pain was appropriately ruled out by the movant's physical examination. In the opinion of Plaintiff's expert, this examination did not rule out the possibility of infection, and Dr. Manouel merely treated the symptom of pain without diagnosing its true cause. The expert also opines that the proper course of action in accordance with the standard of care "would have been at most administering a local anesthetic into the area to see if that would have any benefit to reduce the pain" without the steroid.

Plaintiff's expert further opines, based on Ms. Santana's testimony that she spoke with Dr. Manouel at LIJ while her husband was being treated by the emergency department on December 18, that the standard of care required him "to become fully involved in his patient's ongoing care and treatment and not simply walk away." The expert specifically opines that Dr. Manouel should have ordered a "timely and immediate MRI of the entire

7

[* 7]

spine" due to Plaintiff's progressing symptoms including urinary incontinence. The expert opines this delay in obtaining a full MRI of the spine (only a lumbar spine MRI was ordered prior to his transfer to North Shore University Hospital) was a proximate cause of a 24-hour delay from his presentation at LIJ to his first surgery at North Shore University Hospital, then another 12-hour delay until the surgery on his cervical spine.

On the issue of causation, Plaintiff's expert opines that the use of a steroid injection "masks infectious symptoms and fuels the environment where an infection or abscess will flourish." The expert opines that Dr. Manouel's departures from the standard of care, i.e., the trigger point injections masking Plaintiff's symptoms and the misdiagnosis and treatment of a sprain without ordering or reviewing any further tests, resulted in a delay in proper diagnosis. The expert opines that this was a proximate cause of Plaintiff not receiving the necessary surgeries to evacuate the spinal epidural abscess until December 19, and that delay allowed his condition to significantly worsen, ultimately causing a permanent ischemic spinal cord injury and loss of use of his legs.

Plaintiff's expert also addresses the informed consent cause of action, opining that Dr. Manouel departed from the standard of care by insufficiently informing Plaintiff of the risks and by not offering the alternative of injecting only lidocaine or waiting for an MRI workup or blood work to rule out an existing infection.

Plaintiff's expert has raised clear issues of fact to defeat Dr. Manouel's motion for summary judgment, as it pertains to his examination and treatment of Plaintiff on December 13. Plaintiff also raises an issue of fact on proximate causation, as the experts are in conflict as to whether the trigger point steroid injection masked his symptoms and allowed the infection to worsen over the following days. Finally, even if the movant had met their prima facie burden on the issue of informed consent, Plaintiff's expert raises an issue of fact as to whether consent was obtained with sufficient understanding of risks and alternatives to the trigger point injections. For these reasons, Dr. Manouel's motion for summary judgment on these claims must be denied.

Notwithstanding the above, Plaintiff fails to raise an issue of fact as to the claims that Dr. Manouel failed to intervene in Plaintiff's treatment and order a full spine MRI on December 18. Even accepting Ms. Santana's testimony that she spoke to Dr. Manouel on December 18, there is no dispute that the patient was already admitted to the LIJ emergency department at that time. His attending physician was Khyzar Chaudhry, M.D., who had

8

access to his prior records and ordered the MRI of his lumbar spine. There is no evidence based on the submissions that Dr. Manouel or any other orthopedic specialist was called to consult on that date, nor that he provided even informal advice to the patient or his spouse. There is also no evidence Dr. Manouel had the authority or assumed a duty to direct treatment or order MRI imaging studies. Ms. Santana admitted elsewhere in her testimony that Dr. Manouel only "treated" Plaintiff on December 13. "Liability for medical malpractice may not be imposed in the absence of a physical-patient relationship. A physician-patient relationship is created when professional services are rendered and accepted for purposes of medical or surgical treatment," or at minimum may be implied "when a physician gives advice to a patient" (*Thomas v Hermoso,* 110 AD3d 984 [2d Dept 2013]). Here, there is no genuine issue of fact as to the lack of a physician-patient relationship between Dr. Manouel and Plaintiff on December 18, and therefore Dr. Manouel is granted summary judgment as to those claims only.

Plaintiff does not oppose the branch of Dr. Manouel's motion seeking to dismiss any claims of negligent hiring, training, or supervision asserted in the bill of particulars. Accordingly, the motion is granted to the extent of dismissing the December 18 claims and the claims of negligent hiring, training, and supervision against Dr. Manouel and Able Orthopedics & Sports Medicine, P.C., only, and the motion is otherwise denied.

The additional issues discussed by Plaintiff, concerning whether Dr. Manouel was properly authorized by the ER attending physician to act as an orthopedic consult on December 13, are not relevant to any claims addressed in Dr. Manouel's moving papers and are not part of the Court's consideration in this motion.

Turning to the motion of Dr. Desir, the movant submits an expert affirmation from Brian Feingold, M.d. ("Dr. Feingold"), a licensed physician certified in internal medicine.

Based on the medical records and testimony, Dr. Feingold opines that Plaintiff's primary care physician Dr. Desir acted in accordance with the standard of care on the dates at issue. Dr. Feingold notes that Dr. Desir had recently seen Plaintiff for an annual exam on November 23, 2018, at which time he had a viral infection. On December 15, Plaintiff visited Dr. Desir following his emergency room visit two days prior, as noted in the doctor's records. Dr. Desir noted that he had pulsating lower back pain, subjectively rated 8/10, and that he had been given opioid, muscle relaxant, and "steroid shot" at the ER. She observed upon examination that he had

9

significant muscle spasm, decreased quadriceps strength, limited range of motion, and was slouching and walking with a limp. She prescribed Tramadol and gave him an orthopedic referral. Dr. Feingold opines that this course of treatment based on his presentation was in accordance with the standard of care. Dr. Feingold states that a spinal epidural abscess is "generally uncommon," usually associated with bacteria from "self-injected drug use, dental abscesses, infected catheters, or endocarditis," and the symptoms include "fever, spine tenderness, sweats, and chills" in addition to back pain. He notes that symptoms can also include "bladder or bowel incontinence [and] numbness in extremities" as the abscess progresses. Because Plaintiff had none of these additional symptoms on December 15, Dr. Feingold opines that "there were no overt red flags for an ongoing infection at this visit" and that it was reasonable for Dr. Desir to attribute his back pain to a mechanical source, such as muscle sprain or slipped disc, rather than an abscess. Dr. Feingold further opines that ordering additional MRI or CT studies, blood work, or referring the patient back to the hospital for urgent or emergency treatment was not indicated on December 15, and therefore he opines that Dr. Desir did not depart from the standard of care by referring him to follow up with an orthopedist rather than return to the hospital.

Dr. Feingold also opines that Dr. Desir did not depart from the standard of care with respect to the December 17 phone call with Ms. Santana. In the expert's opinion, it was still a reasonable medical assumption that Plaintiff's chief complaint of "uncontrollable shaking" was due to a reaction or withdrawal from his medication, and she therefore gave appropriate medical advice to cut back on said medications and follow up if his symptoms worsened.

Further, Dr. Feingold opines that Dr. Desir's alleged departure from the standard of care on the evening of December 17 did not proximately cause or contribute to Plaintiff's injuries. The expert notes that Ms. Santana took her spouse to the emergency department of LIJ the following morning when his condition did not improve overnight. Even if Dr. Desir had advised them to go directly to the hospital at 8:00 p.m. the previous night, as Plaintiff asserts was the standard of care, the expert opines that the difference of approximately 12 hours between that phone call and his arrival at the emergency room would not have changed his course of treatment, diagnosis, or outcome.

10

[* 10]

Based on the submissions, Dr. Desir has established prima facie entitlement to summary judgment on the basis that there were no departures from the standard of care in her treatment or recommendations on December 15 and December 17. The expert does not address proximate causation with respect to the December 15 claims, but he does establish prima facie that Dr. Desir's actions on December 17 did not proximately cause or contribute to the worsening of Plaintiff's spinal epidural abscess.

In opposition, Plaintiff submits an expert affirmation from a licensed physician certified in internal medicine, [name of expert redacted]. The Court was presented with the signed, unredacted affirmation for *in camera* inspection.

Plaintiff's expert opines that during the December 15 office visit, Plaintiff was "appreciably worse than his presentation two days earlier at the emergency room," exhibiting deep pain, spasms, limited range of motion, a limp, and bent/slouching posture, which the expert opines are "all pain avoidance mechanisms." The expert notes that Dr. Desir did not document any reflex testing or more detailed findings as to his range of motion. The expert also notes that Dr. Desir knew Plaintiff to be a diabetic and immuno-compromised patient, with elevated blood glucose levels upon examination, and that she knew he had recently received a steroid trigger point injection but still had worsening symptoms. According to Plaintiff's expert, the standard of care in these circumstances was to refer Plaintiff back to the hospital for an immediate MRI, and Dr. Desir departed from the standard of care by failing to address his "ongoing and progressive findings" and rule out a more serious spinal issue.

The expert also opines that it was a departure from the standard of care for Dr. Desir not to ask further questions or attempt to speak with Plaintiff directly during the December 17 phone call with his wife. The expert opines that Dr. Desir failed to properly recognize the severity of his symptoms that evening and failed to direct him to go back to the hospital immediately for an MRI. Dr. Desir's notes on this phone call are limited, but Ms. Santana testified that by that evening Plaintiff was not only shaking but was also unable to stand or walk after a fall and he had "urinated on himself." Plaintiff's expert points out that even the movant's expert stated bladder incontinence was a symptom of a spinal epidural abscess. Therefore, the expert opines that Dr. Desir departed from the standard of care by failing to appreciate this symptom and refer him immediately to a hospital for more

11

aggressive diagnostic tests and treatment.

On the issue of proximate causation, Plaintiff's expert opines that the alleged failure to refer Plaintiff back to the hospital for a prompt MRI on December 15 resulted in his delayed diagnosis and treatment. Additionally, Plaintiff's expert counters Dr. Feingold's statement that Dr. Desir's alleged departures on December 17 did not proximately cause his injuries, because Plaintiff ultimately did return to the LIJ emergency room the following morning. Plaintiff's expert opines that "in a situation where there is potential for ischemic compromise of the cord . . . time is of the essence." The expert opines that the delay of 12-15 hours between the phone call with Dr. Desir and his arrival at LIJ was significant. In that time, the expert notes, he could have begun antibiotics, received appropriate radiological studies, and been transferred more quickly to North Shore University Hospital for surgery. Thus, Plaintiff's expert opines this delay contributed to a worse outcome and more permanent injuries.

The submissions from Plaintiff's expert have sufficiently raised issues of fact to defeat Dr. Desir's summary judgment motion. Where experts express conflicting opinions as to the standard of care and proximate causation, only the jury may make a determination on these issues of fact and credibility.

Notwithstanding the above, Plaintiff's expert does not address the issue of informed consent with respect to Dr. Desir, and this cause of action is not applicable to the underlying facts. Based on the record and the parties' submissions, Dr. Desir did not perform any treatment or procedure on the dates in question that involved "affirmative violation of the plaintiff's physical integrity" (*Samer v Desai,* 179 AD3d 860, 864 [2d Dept 2020]). Plaintiff also does not oppose the branch of the motion seeking to dismiss any claims of negligent hiring/training/supervision as asserted in the bill of particulars. Accordingly, the motion is granted to the extent of dismissing the informed consent cause of action and the claims of negligent hiring, training, or supervision against Dr. Desir and Mergie Desir, M.D., P.L.L.C., only, and the motion is otherwise denied.

It is hereby:

**ORDERED** that Defendants Dr. Manouel and Able Orthopedics & Sports Medicine, P.C.'s motion (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing all claims and causes of action against them, is **GRANTED TO THE EXTENT** of dismissing the claims arising

12

[* 12]

from alleged treatment or care on December 18, and dismissing any claims for negligent hiring, training, and supervision, and the motion is otherwise **DENIED;** and it is further

**ORDERED** that Defendants Dr. Desir and Mergie Desir, M.D., P.L.L.C.'s motion (Seq. No. 5) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor, dismissing all claims against them, and removing them from the caption of this action, is **GRANTED TO THE EXTENT** of dismissing the cause of action for lack of informed consent against them, and dismissing any claims of negligent hiring, training, and supervision against them, and the motion is otherwise **DENIED.**

This constitutes the decision and order of this Court.

**ENTER.**

_____

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

13

[* 13]